IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DELPHINE BRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **8:05CV36** |
| | ) | |
| DOUGLAS COUNTY, NEBRASKA, | ) | **MEMORANDUM** |
| and ROBERT HOUSTON, Director of | ) | **AND ORDER** |
| Douglas County Correctional Center, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before me pursuant to 28 U.S.C. § 636 and the consent of the parties on defendant's MOTION FOR SUMMARY JUDGMENT (Filing 50). Having carefully considered all the briefs and evidentiary materials submitted by the parties (Filings 50-53 and 56-58) I find that the motion should be granted.

## I. INTRODUCTION

Plaintiff, an African-American female, was hired by Douglas County in June 2003 as a Correctional Officer I. Her employment was terminated in December 2003, upon the expiration of a six-month probationary period.

In April 2004, plaintiff filed charges of discrimination with the Nebraska Equal Opportunity Commission (NEOC), which issued its Determination on or about August 20, 2004. On or about November 4, 2004, the Equal Employment Opportunity Commission (EEOC) issued a Dismissal and Notice of Rights to the plaintiff.

In this lawsuit, plaintiff seeks relief for discrimination based on race and religion pursuant to 42 U.S.C. § 1983. She has also asserted claims pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") for discrimination based on race, religion, and retaliation for engaging in a protected activity.

The defendants contend summary judgment should be granted in their favor on plaintiff's § 1983 claim because the plaintiff has failed to identify any policy or custom on the part of Douglas County that led to or resulted in the deprivation of a constitutional right. The defendants further contend they are entitled to summary judgment on the Title VII claims because plaintiff cannot prove a prima facie case of discrimination or retaliation and, in the alternative, because the defendants' actions were based on legitimate nondiscriminatory reasons.

## II.  JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue in this district is proper under 28 U.S.C. § 1391(b).

## III.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Gilooly v. Missouri Dep't of Health & Senior Serv.,* 421 F.3d 734, 738 (8th Cir. 2005). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing

-2-

law will properly preclude the entry of summary judgment.'" *Dulany v. Carhahan*, 132 F.3d 1234, 1237 (8th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997). Accordingly, a party moving for summary judgment must "set forth in the brief in support of the motion for summary judgment a separate statement of each material fact as to which the moving party contends there is no genuine issue to be tried and as to each shall identify the specific document or portion thereof or discovery response or deposition testimony ... which it claims established the fact." NECivR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting Fed. R. Civ. P. 56(e)).

A nonmoving party may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998). In this respect, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts;' ... [i]t must show there is sufficient evidence to support a jury verdict in [its] favor." *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). Accordingly, the nonmoving party must "set forth in its opposing brief a

separate statement of each material fact as to which it is contended there exists a genuine issue to

be tried and as to each shall identify the specific document or discovery response or deposition

testimony ... which it is claimed establishes the issue."  NECivR 56.1(b).

## IV.  FINDINGS OF FACT

I find that the following facts are uncontroverted for purposes of this Motion for Summary

Judgment and constitute the material facts upon which a resolution of these issues must be premised.

1.    The plaintiff, Delphine Bray, is African-American.

2.    Defendant, County of Douglas, Nebraska, is a political subdivision of the State of

Nebraska.  The Douglas County Department of Corrections ("Department") is an agency of Douglas

County, Nebraska.

3.    Defendant, Robert Houston, sued in his official capacity only[1], was appointed as Interim

Director of the Douglas County Department of Corrections on or about April 2003 and was hired

by Douglas County as Director of the Department in September 2003. He served as Director of the

Department from September of 2003 to February of 2005.

4.    Plaintiff began working as a Corrections Officer I with the Department on June 9, 2003.

5.    All newly hired correctional officers serve a six-month probationary period.  Plaintiff's

probationary period began June 9, 2003 and ended at the close of business on December 9, 2003.

---

[1]Plaintiff named Houston as a defendant in this case without expressly pleading against him in his individual capacity.  "A suit against a public official in his individual capacity requires that the public official be named in his personal capacity as an individual. If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998).

6.    The purpose of the probationary period is to provide the employer an opportunity to evaluate the employee's ability to effectively perform the job duties.

7.    Plaintiff's supervisor was Sergeant Matthew Wheeler.

8.    In August of 2003, Sergeant Wheeler gave the plaintiff her 10-week performance evaluation. The evaluation stated that plaintiff's job performance was satisfactory.

9.    On September 15, 2003, Sergeant Wheeler gave the plaintiff a written commendation regarding her work with the inmates. The commendation was given in response to positive comments some of the inmates made about the plaintiff.

10.   On September 18, 2003, the plaintiff witnessed an incident involving Latisha Jackson, a female African-American inmate.  Jackson, who had finished a one-hour recreational break from administrative lockdown, was being escorted back to her room by Officer Jodi Carver.  Jackson became noncompliant, refused to return to her room and began arguing loudly with other inmates in the housing unit.  The incident escalated to a physical altercation between Officer Carver and the inmate.   Plaintiff and Officer Molli Thomas were present. Officer Thomas sounded an alarm requesting officer assistance. The responding officers, and the plaintiff, transported Jackson to the isolation unit.  All three officers submitted written reports of the incident.

11.   Officer Carver reported that the plaintiff did not respond when Carver requested plaintiff's assistance with inmate Jackson.  In her own report, the plaintiff indicated that Officer Carver purposely escalated the situation to a physical altercation that could have been avoided.  On September 28, 2003, Sergeant Marcia Carter, who was assigned to the Department's Office of Professional Responsibility, interviewed the plaintiff on the matter.

12.   During the September 28, 2003 interview, Sergeant Carter also questioned the plaintiff about allegations made against her by an inmate named Donyale Fellows.  Plaintiff denied most of Fellows' allegations but, according to Sergeant Carter, admitted that she had participated in "prayer circles" with the inmates on two occasions.  In plaintiff's written report she also admitted she "anointed" her desk and herself before letting inmates out of their rooms in the housing unit.

13.   On October 11, 2003, Sergeant Carter submitted a report to Director Houston.  In her report to Director Houston, Sergeant Carter recommended that the plaintiff not be retained.

14.   In December 2003, Sergeant Wheeler conducted the Plaintiff's six-month performance evaluation.  Plaintiff received an overall score of "1" which is "marginal." Sergeant Wheeler recommended to Director Houston that the plaintiff not be retained.

15.   Plaintiff's employment was terminated on December 9, 2003, the last day of her six-month probation.

## V.  CONCLUSIONS OF LAW

### A.   Section 1983 Claim

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

The theory of liability in a § 1983 employment discrimination claim is that discrimination on the basis of race, sex, religion, or exercise of First Amendment rights constitutes a deprivation of equal protection and, thus, violates the fourteenth amendment to the U.S. Constitution.

A local governing body may be sued directly, as a "person" under 42 U.S.C. § 1983, but its liability, if any, is strictly limited.  *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Under *Monell*, municipal governments can be held liable for the acts of their employees in contravention of individuals' civil rights "only upon a showing that a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" is the motivating force behind the acts of those employees. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994); *see also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998).  Accordingly, to prevail against the defendants on her § 1983 claim, the plaintiff must prove that her employer, Douglas County, had an official policy or widespread custom that violated the law and caused her injury.

The policy or custom alleged in this matter is that of "arbitrarily retraining or evaluating white correctional officers during probationary periods while not retraining or evaluating Plaintiff in the same manner," instead, basing their decision to terminate her employment on the plaintiff's race and religion.  Filing 56 (Plaintiff's Brief) at pp. 5-6.  "In general, the Equal Protection Clause requires that state actors treat similarly situated people alike.  *See Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995).  State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause.  *See id.*"  *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000), *cert. denied*, 534 U.S. 816 (2001) (parallel citations omitted).  Consequently, the plaintiff must, as a threshold matter demonstrate that she was treated less favorably than similarly-situated employees because of her race and/or religion.

-7-

In this regard, the plaintiff offers two examples of Caucasian correctional officers, Jeanne Sell and Joseph Sliva, who committed rule violations as probationary employees, but were allowed to complete their probations and/or were given additional training. Plaintiff testified during her deposition that Officer Sell, who was still on probation, "left her proximity card at home," but was retrained instead of being written up or terminated. Officer Sliva was reprimanded for misplacing his keys, but was not terminated. There is no evidence as to Sell's or Sliva's religious activities.

The record does show that, at the end of her six-month probationary period in October 2002, Officer Sell received an overall rating of "2," or "satisfactory." Regarding the rule violation committed by Sells, a "proximity card" allows an officer access to the facility. When a card is reported lost, it is deactivated so that any security risk is diffused. Thus, Director Houston did not believe Sell's leaving her proximity card at home warranted termination.

Officer Sliva reported in late June 2003 that he had misplaced some keys to the facility. At the end of his six-month probationary period on July 6, 2003, Officer Sliva received an overall rating of "3," or "commendable." Officer Sliva's reprimand for misplacing the keys was issued on July 16, 2003, after his probationary period expired, and Director Houston did not feel that termination was warranted for accidentally misplacing keys. "Unlike the Plaintiff, Officer Sliva's performance was otherwise commendable." Filing 52-2, Affidavit of Robert Houston at ¶ 18.

In comparison, the plaintiff's behavior of concern involved her becoming "too personal with the inmates," which posed a security risk:

> [W]hen Sgt. Carter questioned the Plaintiff ..., she admitted she joined in the inmates' prayer circle two times. In a written report, she also admitted she "anointed" herself at her desk before letting inmates out of their rooms. This happened within the housing unit and in the presence of the inmates....

The Plaintiff's behavior was a concern to [Houston] because any time an officer becomes too personal with the inmates it poses a security risk. For example, if an officer is participating in a prayer circle with the inmates, the inmates may feel they too should participate. If they do not, they may feel the officer will somehow hold it against them, or they may feel that the officer is favoring those inmates that participate. This is the type of inappropriate officer/inmate relations that is addressed during the required officer training course that the Plaintiff participated in at the beginning of her employment. It was clear to [Houston] based on the Plaintiff's written report ... and the admissions she made to Sgt. Carter, that she did not seem to appreciate that her participation in "prayer circles" and "anointing" ceremonies was inappropriate behavior for a correctional officer and could pose a security risk in the housing unit. The Plaintiff's religious beliefs, whatever they may be, is not what concerned [Houston].

Filing 52-2, Affidavit of Robert Houston at ¶¶ 13-14.

Absent direct evidence of discriminatory intent, § 1983 claims of this nature are governed

by the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To survive summary judgment, a plaintiff must first demonstrate a prima facie case of discrimination. *See* [*Roark v. City of Hazen,* 189 F.3d 758, 761 (8th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973))]. A prima facie showing creates a legal presumption of unlawful discrimination and shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *See O'Sullivan v. Minnesota,* 191 F.3d 965, 969 (8th Cir. 1999). If the defendant presents a nondiscriminatory reason, "the presumption of discrimination drops from the case" and the burden reverts to the plaintiff to show that the defendant's proffered reason for her termination is pretextual. *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

*Bogren v. Minnesota*, 236 F.3d at 404 (parallel citations omitted).

In the decisions of the Eighth Circuit, the meaning of the term "similarly situated" may vary,

depending on whether it is analyzed at the prima facie stage or the pretext stage of the case. *See,*

*e.g., Rodgers v. U.S. Bank*, 417 F.3d 845, 851-53 (8th Cir. 2005). At the prima facie stage, the

plaintiff must show that she and the comparable employees were involved in or accused of the same

or similar conduct and were disciplined in different ways. *See id.* at 852. At the pretext stage, the

plaintiff must show that the comparable employees (1) dealt with the same supervisor, (2) were

subject to the same standards, and (3) engaged in the same conduct without any mitigating or

distinguishing circumstances. *Rodgers v. U.S. Bank*, 417 F.3d at 851; *cf. Tolen v. Ashcroft*, 377 F.3d

879, 882 (8th Cir. 2004) (applying the more stringent standard in conjunction with the prima facie

case).

Assuming, without deciding, that the plaintiff and the comparable employees dealt with the

same supervisor and were subject to the same standards, the plaintiff has failed to show that she,

Sell, and Sliva engaged in the same or similar conduct. For that reason, she has failed to demonstrate

that she was treated less favorably than similarly-situated employees.

Turning to the alleged policy or custom itself,

> A plaintiff may establish municipal liability under § 1983 by proving that
> his or her constitutional rights were violated by an "action pursuant to
> official municipal policy" or misconduct so pervasive among non-
> policymaking employees of the municipality "as to constitute a 'custom or
> usage' with the force of law." *Monell v. Department of Soc. Serv.,* 436 U.S.
> 658, 691(1978) (*Monell*) (internal quotation omitted); *see also McGautha
> v. Jackson County,* 36 F.3d 53, 55-57 (8th Cir. 1994) (*McGautha* ); *Jane
> Doe A v. Special Sch. Dist.,* 901 F.2d 642, 646 (8th Cir. 1990) (*Jane Doe
> A* ). "Official policy involves 'a deliberate choice to follow a course of
> action * * * made from among various alternatives' by an official who [is
> determined by state law to have] the final authority to establish
> governmental policy." *Jane Doe A,* 901 F.2d at 645. Alternatively, "custom
> or usage" is demonstrated by:
>> (1) The existence of a continuing, widespread, persistent
>> pattern of unconstitutional misconduct by the governmental
>> entity's employees;
>> (2) Deliberate indifference to or tacit authorization of such
>> conduct by the governmental entity's policymaking officials after
>> notice to the officials of that misconduct; and

> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the
> governmental entity's custom, i.e., [proof] that the custom was the
> moving force behind the constitutional violation.
> *Id.* at 646 (citing *Harris v. City of Pagedale,* 821 F.2d 499, 504-07 (8th Cir.
> 1987) (*Harris* )).

*Kuha v. City of Minnetonka*, 365 F.3d 590, 603-604 (8th Cir. 2004) (quoting *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir.1998)).

Applying these standards, I further find that the plaintiff has failed to demonstrate any custom, policy, or practice of Douglas County of "arbitrarily retraining or evaluating white correctional officers during probationary periods while not retraining or evaluating Plaintiff in the same manner," due to plaintiff's race and/or religion.

For these reasons, summary judgment will be entered in favor of the defendants on plaintiff's claim pursuant to 42 U.S.C. § 1983.

## B.   Title VII Claims Based on Race and Religion

Plaintiff has asserted claims for discrimination based on race and religion pursuant to Title VII.  Title VII prohibits an employer from discharging an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see, e.g., Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1036 (8th Cir. 2005).

The plaintiff does not argue there is any direct evidence showing a specific link between the alleged discrimination and her termination.  Consequently, the court will proceed under the burden shifting framework of *McDonnell-Douglas Corp. v. Green.*

To demonstrate a prima facie case of discrimination, the plaintiff must show that she (1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated people.  *See Schoffstall*

*v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)).

In this case, the plaintiff is a member of a protected class and suffered an adverse employment action. The court assumes, without deciding, that the plaintiff was qualified to perform the job of Correctional Officer I; however, as discussed in conjunction with her § 1983 claim, the plaintiff has not shown that she was treated differently than similarly situated people outside the protected class. Hence, she has failed to demonstrate a prima facie case of discrimination.

Even if the plaintiff had established a prima facie case for discrimination based on race or religion, the defendants have articulated legitimate nondiscriminatory reasons for terminating her employment: a low overall job performance rating, inappropriate relations with inmates, and failure to appreciate that her participation in "prayer circles" and "anointing" ceremonies was inappropriate behavior for a correctional officer and could pose a security risk in the housing unit. The courts will not sit as "super-personnel departments reviewing wisdom or fairness" of employer's judgments unless they were intentionally discriminatory. *Edmund v. MidAmerica Energy Co.*, 299 F.3d 679, 686 (8th Cir. 2002).

The defendants have established nondiscriminatory reasons for their actions. Plaintiff has produced no evidence, other than her own assertions, that her the defendants' proffered reasons were false and her discharge actually resulted from race or religious discrimination. See

The court finds that summary judgment should be granted in favor of the defendants on plaintiff's Title VII claims for race and religious discrimination because the plaintiff has not demonstrated a prima facie case of discrimination and, in the alternative, because the defendants

have established nondiscriminatory reasons for their actions and plaintiff has not produced any

legitimate evidence that these reasons were a pretext for discrimination.

### C.   Title VII Claim for Retaliation

Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice **made an unlawful employment practice by this subchapter**, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing **under this subchapter**.

42 U.S.C. § 2000e-3(a) (emphasis added).

To establish a *prima facie* case of retaliation, the plaintiff must show that she "engaged in

protected conduct, that [s]he suffered an adverse employment action, and that the adverse action was

causally linked to the protected conduct." *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir.

2004).

Plaintiff alleges the defendants "illegally retaliated against Plaintiff who, by reporting [an]

assault of a minority [Douglas County] inmate, engaged in protected activity." Plaintiff's Complaint

at ¶ 26.  In this regard, the plaintiff testified during her deposition (41:21-25) that she believed her

employment was terminated because "I seen something that I shouldn't have seen and I wrote the

reports the way that it happened, not the way that they wanted me to write the reports" concerning

the September 18, 2003, incident involving inmate Latisha Jackson.  The plaintiff has not produced

any evidence that any officer or supervisor criticized her for these reports.

"[O]pposing an employer's actions outside the ambit of an employment practice is

unprotected by Title VII." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1183

(8th Cir. 1998).  Plaintiff's submitting reports of the Latisha Jackson incident did not address any

-13-

issue involving illegal discrimination in employment. The use of excessive force against an inmate, while illegal, is not an activity prohibited by Title VII, and the plaintiff's report of officer misconduct did not involve any investigation, proceeding, or hearing that is governed by Title VII.

I find that plaintiff's reporting of officer misconduct is not protected under Title VII. The plaintiff did not suffer illegal retaliation for opposing any practice that is unlawful under Title VII or because she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

For these reasons, the defendants are entitled to summary judgment on plaintiff's Title VII retaliation claim.

## VI. CONCLUSION

Summary judgment should seldom be granted in discrimination cases, *Heaser v. Toro*, 247 F.3d 826, 829 (8th Cir. 2001), and, in ruling on a motion for summary judgment, it is not the court's role to weigh evidence or attempt to determine truth of the matter. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

The court has no doubt that the plaintiff's actions as a Correctional Officer were well-intentioned and that she was genuinely concerned for the welfare of the inmates who were under her supervision. That said, the plaintiff has not shown that she was adversely affected by intentional discrimination, i.e., that she was treated less favorably than similarly-situated Caucasian employees because of her race or religion. Nor was the plaintiff able to demonstrate any custom, policy, or practice of Douglas County of "arbitrarily retraining or evaluating white correctional officers during probationary periods while not retraining or evaluating Plaintiff in the same manner," due to

-14-

plaintiff's race or religion.  Viewing the facts and inferences in the light most favorable to the plaintiff, the plaintiff has failed to establish the elements essential to her claims, and on which she would bear the burden of proof at trial.  There is no genuine issue as to any material fact and the defendants are entitled to a judgment as a matter of law.

**IT THEREFORE IS ORDERED:**

1.    Defendant's MOTION FOR SUMMARY JUDGMENT (Filing 50) is granted in its entirety.

2.    Pursuant to this Memorandum and Order, judgment will be entered in favor of the defendants and against the plaintiff.

**DATED May 30, 2006.**

                                          **BY THE COURT:**

                                          **s/ F.A. Gossett**
                                          **United States Magistrate Judge**